May it please the court Lawrence Rolfing on behalf of Scott Holden. The court issued an order directing the parties to address itself to the pending case of Shaibi v. Berryhill, decided in August 22, still pending on a request for a re-hearing in Bank, which means it's not yet crystallized as the law of the circuit. The holding in Shaibi as it applies to the discussion of whether a vocational expert testimony that has a facial conflict with the Occupational Outlook Handbook with respect to the numbers of jobs is waived for failing to bring it up, failure of counsel to bring that issue before the ALJ. The critical difference in between Mr. Shaibi's case and Mr. Holden's case is that Mr. Holden was not represented by an attorney, he was represented by a non-attorney. And there are two cases that clarify the distinction of when waiver applies and doesn't apply, and the cases are Chowdhury and McLeod. In McLeod, the claimant was able to bring in VA information late because he was represented by a non-attorney representative, and in Chowdhury, Mr. Chowdhury was not able to bring in late VA information because he was represented by an attorney. This is the pattern that we have in the circuit of not fixating waiver when the claimant is represented by a non-attorney, and there are some really good reasons why waiver should not apply. The non-attorney representatives are not — they didn't take evidence. They didn't take civil procedure. They don't understand waiver. They don't understand — they're not trained in the nuances of when issues must be brought up. And as long as the agency allows non-attorney representatives to represent claimants before the agency, then that is — that places an extra burden on the ALJ to be a little bit more careful, to pay attention a little bit more, and to exercise that duty to fully and fairly develop the record. And the record in this case is the administrative regulations require the agency to take administrative notice of the Occupational Outlook Handbook, and the vocational expert's testimony has a direct facial conflict with the Occupational Outlook Handbook, and the ALJ did not resolve it and should have. The Code of Federal Regulations says the commissioner will take notice of these things, but is that a one-way street? Because the question here is a little bit collateral to what your argument has been, and that is whether there is a sosponte obligation on the part of the commissioner to do this, as opposed to the fact that the commissioner will do this when the commissioner sees fit. Well, the word is will, not may. And not shall. And Garner in his style guides has said that people that write statutes and regulations should get away from shall because shall is a little bit slippery. You and I agree that shall is mandatory. Some of the cases say it's not. I'm going to defer to Professor Garner. He says that will is mandatory. And there are cases in the Ninth Circuit that describe will as mandatory. I will get up and argue the case. If I just sat in the chair, you'd ask me to get off my seat and come up and argue the case. Will is mandatory language. The commissioner will take administrative notice. Is there a conflict, then, between the Code of Federal Regulations and case law that suggests that there is not a sosponte duty on the part of the commissioner? Well, the case that says there's not a sosponte duty on the part of the commissioner is Shaibi v. Berryhill. And Shaibi is pending on a request for re-hearing in bank and a request for re-hearing by the panel. And the court has issued an order, and the commissioner is supposed to respond. It's got an extension. It's now due in December, to whether this court should treat the evidence that comes in from the Occupational Outlook Handbook and county business patterns different than it treats an attack on vocational expert testimony that comes in from the DOT. The law of the circuit is very clear that a claimant can come into district court and say, this vocational expert testimony, that conflicts with the Dictionary of Occupational Titles, and the ALJ didn't resolve that conflict for the first time, not to the Appeals Council, not before the ALJ, but in district court for the first time. By the time we get here, it's too late. But they can. And so the question is, if the commissioner has a list of five things, the DOT, county business patterns, census reports, other reports by States, and the Occupational Outlook Handbook, is there a linguistic difference in will-take administrative notice between the DOT and the Occupational Outlook Handbook? And if there are no differences, do you necessarily, with all due respect to the author of Scheibe, do you necessarily have to take the position it was wrongly decided? Well, I filed the request for re-hearing in Bonk, so yes. There are parts of Scheibe that are troubling. One of them is the duty to cross-examine the vocational expert. There's a duty, if waiver attaches, then there's a duty to present contrary evidence. But I don't think there should be a duty to cross-examine. But the fundamental core of Scheibe and the basis for the request for re-hearing in Bonk is that the concept of administrative notice, when the agency says we will take administrative notice of these documents, of these publications, it puts the public on notice that the agency is going to wrap itself around those publications and that data, and it's up to the claimant for benefits to come in with evidence to rebut the administratively noticed data. And that's in the Administrative Procedures Act. It's in the ______. Does it say anywhere in the OOH the numbers for the individual jobs? I couldn't find it. The Occupational Outlook Handbook does not break down job numbers by DOT code. But we do ______, the Occupational Outlook Handbook points to the ONET, and the ONET says this occupational group of production workers, all other, contains 1,590 separate DOT codes. And if we looked at the DOT and compared them to that list, we'd find that 52 of them are sedentary and unskilled. Three hundred and – 452 of them are light and unskilled. The rest of them are semi-skilled, medium, heavy, very heavy. They don't fit. Well, I'm just trying to figure out – you rely on the SSRO-4P, it looks like, for the proposition that the ALJ should take, you know, this administrative notice. But that document only states that the ALJ must notice the DOT and the SCO. Correct. So even if we defer to the agency's policies, how does that document stand for the proposition that the ALJ must notice the OOH? Because 004P does not have the weight of law. 004P is an interpretation of paragraph D.1 of the regulations. My position with respect to – Mr. Holden's position with respect to D.5 is that 004P tells us how the agency considers D.1. How the agency should consider or how this Court should, in the absence of an agency interpretation of D.5, this Court should say the way that you interpret D.1, we're going to hold your feet to the fire and interpret D.5 and D.2 in the same exact way. Counsel, Judge Gould, if I could interject two questions. One I think might be simple. The other more difficult. The one I hope is simple is should this panel defer submission in this case until after there's a final mandate in SHIPE? I think the distinction between the attorney and non-attorney representative allows this Court to proceed even though SHIPE hasn't been finalized. But prudence would suggest that the Court wait and we have a consistent body of law. Okay, then my second question is, assuming SHIPE remains the same, then I get you would try to distinguish it based on the attorney, non-attorney issue. That is the only distinction. If SHIPE survives intact as currently constituted in the Federal Reporter, then the only distinction that Mr. Holden can cling to is the attorney, non-attorney distinction, the representational status, and that he didn't waive because he had a non-attorney representative. And you believe that you win on that point even if SHIPE is unchanged? Based on McCloud and Chowdhury, yes. McCloud and Chowdhury, I'm sorry. But doesn't Menil, doesn't that tell us about the waiver rule? Because you're saying we should consider waiver, but Menil only tells us to do that in cases of manifest injustice. Isn't that correct? And Menil says at least when the claimant is represented by an attorney, waiver attaches. And so Menil does not conflict with the Chowdhury-McCloud distinction at all. Menil reinforces waiver in the presence of counsel and an admitted attorney at law at the administrative hearing. Then Menil says that issue waiver occurs. But Menil does not preclude the Chowdhury-McCloud distinction that the plaintiff does not waive because they're not trained. So would we still look, I'm trying to figure out, based on what you just said right now, would we still look at it in terms of manifest injustice? I don't think we have to get to manifest injustice. I think we get to the point that the agency should not allow non-attorney representatives to practice before the agency and then attach waiver when we don't have any adequate assurance that these non-attorney representatives had the education, training and experience to understand the concepts of waiver and how cases get tried. They don't have the expertise, and the claimant population is the victim in that situation. So how would that finish, then, for me, how this would resolve, then, if it's a non-attorney representative? I feel like we're kind of going in circles. I think the kernel rule of law would be where the claimant is not represented by an attorney, the claimant is relieved of the obligation to raise all issues concerning administrative notice before the ALJ and may bring them to the court for the first time. Okay. I'm way over time. Okay, thank you. Good morning, Your Honors. Elizabeth Feer for Nancy Berryhill, the Acting Commissioner of Social Security. First thing is that, as Judge Murgia just pointed out, Shaibi affirmed MENAL, which says that if, and it was exactly the same issue, a job numbers issue, and if you don't raise it to the agency, you waive it. So then we get into the representation. Well, the representative here has a degree in neuropsychology. He's actually trained as a vocational expert and as a certified rehabilitation counselor. You can get that information from page 151 to 152 in the record, which has his letterhead. If you go to his website, he says he used to work for the agency. This is a non-attorney representative who's vocationally trained, did not find this to be an issue either before the ALJ or in his letter to the Appeals Council. And the second thing is, if you look at page 130 in the record, which is the acknowledgement of representation letter, there's a box check there that says Mr. McCaskill, the non-attorney rep, is authorized to get direct payment from the agency.  And maintain education and liability insurance the same way as an attorney. And the reason the agency does that is to treat these people essentially the same way as attorneys. So he must have an undergraduate degree, take a test that the agency has created. He has to do CLEs. He has to undergo a background check and have liability insurance. That was a public law, 111-142, which amended the Social Security Act in 2010. And there are regulations, 404, 1717, 1740, 1745, that talk about the obligations and responsibilities a non-attorney rep who is eligible for direct payment gets. So this representative was not the same as the lay representative in McLeod, who we have no information on. But I would not call an eligible non-attorney representative the same thing as a lay representative. And both Shaibi and Menal say counsel. So there should be three different standards here, then, for like a non-represented person? I mean, so someone appearing pro se, someone with a non-lawyer representative, and then for a lawyer representative? I mean, do we have to? What was the last one you said? I'm sorry. Someone who is represented by counsel. I think that the eligible non-attorney reps, and that's what the regulations, how they refer to them, those people should be treated the same as attorneys, especially for an issue like this. Because Mr. Ruffing was talking about being trained in understanding case law and waiver issues and how a case would play out in litigation. But that's not what these people are hired to do. They're hired to represent the claimants before the agency. And the agency ensures that eligible non-attorney representatives are trained in disability law and regulations and that kind of thing. So what we have here is a case where this should be waiver. It should be clear waiver under MENO, irrespective of what happens in SHIABI. And that is our position, and we believe that the ‑‑ when you talk about a manifest injustice here, which satisfies or survives SHIABI no matter what because it's in MENO, that there's no manifest injustice here given this issue. This non-attorney eligible representative who's trained as a vocational expert did not find any problem with the job numbers, the VE identified here, which makes that substantial evidence that the ALJ was allowed to rely on at Step 5. So ‑‑ Counsel, Judge Gould, if I can interject this question. Do you agree with your friend on the other side of the case that it would be sensible for this panel to defer decision until SHIABI comes to rest with a final resolution of the rehearing petition? I think that's reasonable. Okay. And then once that occurs, if it stays the same, then you argue that there's still a waiver here? Yes, absolutely. Okay. Thank you. So I don't know if you want me to get into the other issues about this regulation that is kind of the catalyst for all this, 404.15.66. Well, there's a subsection that Mr. Rolfing does not ever reference, and it's subsection E. And subsection E talks about the complex case where a VE testimony is necessary. And after all the talk about administrative notice of the publications that talk about job numbers, which the agency's position is that that talks about the grid. That's when the ALJ doesn't need a vocational expert and is going to rely on the grid. Subsection E, use of vocational experts or other specialists. If the issue is determining whether you are disabled, is whether your work skills can be used in other work in the specific occupations in which they can be used, or there's a similarly complex issue when we use the services of a vocational expert. That's what the ALJ did here. That's perfectly reasonable under the regulation, under all of the case law. There's Mr. Rolfing's advocating that you read 1566D as no court has ever read it, and as I've never seen any ALJ do in terms of job numbers. There is a difference between ‑‑ it's not just a linguistic difference between what's in subsection D and subsection E, it's the type of evidence this is. You know, ALJs are supposed to assess limitations. They're supposed to understand the kinds of requirements of a job, which is why the agency issued 004P to talk about requirements of a job. Job numbers ALJs have no expertise in, which is why they call them vocational experts. There's a very big difference in the kind of evidence that those subsections talk about. So if you do not have any further questions, we say that under Menal, waiver is still applicable here. If the Court would like to wait for Shaibi, we're fine with that. But we do think that this issue should have been waived, and there's no manifest injustice here with what the ALJ did. Thank you. Thank you. I'll give you one minute. Thank you. Thank you. Ms. Fearon, I disagree vehemently about just one thing. Nonattorney representatives are not counsel. Counsel are attorneys. That's the way we all understand the word. That's the way the word was used in Menal, and it's in the Commissioner's brief, left in my tablet over there. But it says counsel. Counsel doesn't include nonattorney representatives, and we have no evidence of what the regulations say in terms of what the test tests or whether there's what the educational strata is for nonattorneys in terms of waiver. Waiver is not an agency doctrine. Waiver is a court doctrine. Okay. Thank you. Thank you. Thank you both for your arguments here today. The case of Holden v. Berryhill is submitted.
judges: Gould, Murguia, Gritzner